1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF NEW YORK
2

3    ------------------------------------X
                                        :
4    CHAIM LERMAN,
                                        : 15-CV-07381 (SJ)
5              Plaintiff,               :
          v.                            :
6                                       : April 9, 2018
     APPLE, INC.,                       : Brooklyn, New York
7                                       :
               Defendant.               :
8    ------------------------------------X

9

10      TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
               BEFORE THE HONORABLE LOIS BLOOM
11              UNITED STATES MAGISTRATE JUDGE

12   APPEARANCES:

13

     For the Plaintiff:      MICHAEL GRUNFELD, ESQ.
14                           Pomerantz LLP
                             600 Third Avenue, 20th Fl.
15                           New York, New York 10016

16

     For the Defendant:      KEARA M. GORDON, ESQ.
17                           DANIEL C. HARKINS, ESQ.
                             DLA Piper
18                           1261 Avenue of the Americas, 27th Fl.
                             New York, New York 10020
19

20
     Court Transcriber:      SHARI RIEMER, CET-805
21                           TypeWrite Word Processing Service
                             211 N. Milton Road
22                           Saratoga Springs, New York 12866

23

24

25


     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service

2

1   (Proceedings began at 2:43 p.m.)

2          THE CLERK:  Civil Cause for Status Conference,

3   Docket No. 15-CV-7381, Lerman v. Apple, Inc.

4          Will the parties please state your names for the

5   record?

6          MR. GRUNFELD:  Michael Grunfeld from Pomerantz LLP

7   for the plaintiffs.

8          MS. GORDON:  Keara Gordon, DLA Piper, for defendant

9   Apple.

10          MR. HARKINS:  Daniel Harkins, DLA Piper, for

11   defendant Apple as well.

12          THE CLERK:  The Honorable Lois Bloom presiding.

13          THE COURT:  Good afternoon Mr. Grunfeld, Ms. Gordon

14   and Mr. Harkins.

15          This is a status conference in plaintiff's action

16   alleging that defendant engaged in deceptive trade practices

17   and false advertising in violation of the New York General

18   Business Law and New York Consumer Fraud Act.

19          I last spoke to the parties on February 28th which

20   was a telephone conference at which time the court ordered the

21   parties to come to some agreement regarding the protocol

22   regarding examination of plaintiff's phones and to produce

23   plaintiff's phones for inspection by March 27th, and I set

24   today's status conference and reminded the parties that they

25   were expected to discuss and submit a realistic 26(f) report

3

1   and the 26(f) report that I got is still quite protracted and

2   so I set today's conference to move the case along.

3          So, first, has the protocol been agreed upon?

4          MR. GRUNFELD:  Yes, Your Honor.  We agreed on a

5   protocol and the plaintiffs produced the phones that are

6   available on March 20th.  The parties agreed that we would do

7   backup testing on the phones first and then based on those

8   results move on the next phase of testing.  So we received the

9   backup results on March 28th and we're in the process of

10   discussing the next phase of testing.

11          THE COURT:  Okay.  So what needs to be discussed?

12   So you gave the phones over 3/20.  You got the reports 3/28.

13   You had something done to document the phones before you gave

14   them over.  I'm fine with all of that.  Where are we going

15   with this?

16          MR. GRUNFELD:  Your Honor, that's why we agreed to

17   an independent expert that's done the testing and retaining

18   custody of the phones.  So plaintiffs have -- from the outset

19   plaintiffs proposed several steps for the testing protocol.

20   It was Apple's suggestion that we get the backup results first

21   and then decide on the next phase which plaintiffs were okay

22   with.  That makes sense.  We've indicated that we -- we might

23   have some small tweaks to it but essentially that initial set

24   of --

25          THE COURT:  But that's already been done because you

4

1   have the report.

2           MR. GRUNFELD:  The first phase has been done.

3           THE COURT:  Yes.  So now I'm asking -- I'm trying to

4   always look --

5           MR. GRUNFELD:  Yes.

6           THE COURT:  -- forward, Mr. Grunfeld.  I am glad

7   that you got something accomplished between the last time I

8   spoke to you and now but now -- so what are you envisioning is

9   the next step?  Let's talk about --

10          MR. GRUNFELD:  Thank you, Your Honor.  I wasn't

11  clear.  What I was trying to say was that in the initial

12  protocol that the plaintiffs proposed there was several

13  phases.  We have indicated to Apple that some of those initial

14  phases that we had proposed previously we continue to propose

15  and we're waiting to hear Apple's response.

16          THE COURT:  Okay.  So now what can you tell me, Ms.

17  Gordon?

18          MS. GORDON:  Yes, Your Honor.  So we've made a fair

19  amount of progress since we were here last.  We hired an

20  independent expert who has taken possession of the two phones

21  that -- there are four plaintiffs.  Two of them still have

22  their phones.  So we've gotten those two.

23          They have started on the -- they've done the initial

24  stage of the protocol and both sides have also in addition

25  hired their own experts to supplement those tests.  So that

5

1    additional progress has been made.

2            We are now consulting with our respective expert.

3    We're looking forward to what additional testing now that we

4    need to do to build on what was really the sort of blueprint

5    of what's to come next which was done by the independent

6    expert.  We have been working cooperatively with the

7    plaintiffs to get the next stage of those protocols in place.

8    We are working to do that as expeditiously as possible and

9    we --

10            THE COURT:  What does that involve?

11            MS. GORDON:  At this point -- so the plaintiff has

12    suggested certain testing.  It's like --

13            MR. HARKINS:  Geekbench.

14            MS. GORDON:  Geekbench testing.  So we need a little

15    bit more time with our experts to see if there's anything that

16    they want to do in addition to that.  So hopefully we'll be

17    able to see if there's additional steps that need to be

18    augmented and then we can move forward with that additional --

19    we split it into two sections, Your Honor, software and then

20    hardware.  The software part has been done by the independent

21    expert.  We're now talking about the hardware.

22            THE COURT:  So if I can, Mr. Grunfeld, do you agree

23    with everything that Ms. Gordon just said?

24            MR. GRUNFELD:  Yes, that's right.  I guess just with

25    the addition that we know from our experts already what that

6

1   next phase is.  So we're waiting to hear back -- I agree with

2   her description.

3          THE COURT:  You know already what the next phase is

4   but you're waiting for the expert.  Your expert has suggested

5   geekbench testing.  What does that mean?

6          MR. GRUNFELD:  My understanding, and I -- myself is

7   not an expert but my understanding is that it's sort of

8   benchmark tests that can determine the level of performance

9   that the phone is at operating at.

10         THE COURT:  Okay.  So let's assume everybody gets

11  what they are gaming for here.  I want say aiming for.  I'll

12  say gaming here for.  They're going to get experts that say on

13  both sides that plaintiff is going to say that with the

14  installation of the upgrade that the phone immediately crashed

15  and froze and the defendants are going to say that it wasn't

16  the upgrade, it was just the age or the battery or someone

17  off -- we have two people that didn't have phones and so

18  you're going to be trying to represent a class of people who

19  both retained and didn't retain their phones.  That's what I

20  imagine.

21         MR. GRUNFELD:  Right.

22         THE COURT:  And so what are you doing -- I set this

23  discovery deadline for August 17th for fact discovery related

24  to class certification, or that was proposed -- I'm sorry --

25  in the revised 26(f).  You haven't given me a new 26(f).  What

7

1   is it that you think needs to be done so that we can get to

2   the motion because that's going to be the big step here that

3   the plaintiffs are going to need to take.

4           MR. GRUNFELD:  Yes, Your Honor.  So in addition to

5   the testing of the two plaintiff's phones that are available

6   there's essentially fact discovery and expert discovery.  So

7   both sides at this point --

8           THE COURT:  That's every case, Mr. Grunfeld.

9           MR. GRUNFELD:  I understand.  Thank you, Your Honor.

10  So at this point both sides have exchanged discovery requests.

11  We've met and conferred about both the plaintiff's initial

12  discovery requests and Apple's discovery requests to

13  plaintiffs.  Plaintiffs have a second set of discovery

14  requests that are --

15          THE COURT:  I'm sure that both sides will have

16  discovery requests until I set the cutoff for discovery.  The

17  reason why I'm trying to talk you through this is because

18  Judge Johnson would prefer for me to set the deadline for you

19  to file any request to make a motion for class certification

20  at the earliest possible time.  Otherwise you're going to be

21  spinning your wheels from now until then no matter how much

22  time I give you and I'm certainly not giving you until April

23  of 2019.  Since it is a motion that is not automatically

24  referred in this district to a magistrate judge, it goes to

25  the district judge, you need to look at Judge Johnson's rules.

8

1          So I'm looking for a date that is reasonable and it

2     does not need to be at the close of both expert and fact

3     discovery for all purposes because remember, if you get a

4     certified class you're going to be dealing in a different sort

5     of world than if you're doing this individually for the four

6     plaintiffs you have.

7          MR. GRUNFELD:  Yes.  I understand, Your Honor, and

8     we do appreciate it and the plaintiffs certainly want to move

9     things along.  So the reason we don't have a date right now

10    for the end of fact discovery is because the parties

11    anticipate there might be some disputes over the pending

12    discovery requests and so --

13         THE COURT:  But we're only in the beginning of

14    April.  If I'm setting a deadline in August why couldn't that

15    be the deadline for all discovery relevant to class cert?

16         MR. GRUNFELD:  I would be comfortable with that,

17    Your Honor.

18         THE COURT:  That's what you had proposed.  That was

19    some time ago.  If I don't set a date the writing is on the

20    wall.  You're going to keep just litigating the case.  You're

21    not going to get to a point where you say I had enough.

22    You'll just keep going.  What I'm trying to do is build in a

23    deadline for you then to make an application to Judge Johnson

24    under his rules to certify the class.

25         MS. GORDON:  A couple of things, Your Honor, if I

1   may.

2           THE COURT:  Yes.

3           MS. GORDON:  First is with regard to the named

4   plaintiffs who don't have their phones, obviously we are at a

5   disadvantage because I don't know how we can depose them or

6   establish our defenses without them producing their phones.

7           THE COURT:  I'm going to say that you're going to

8   have to try to figure that out because the reality is in this

9   new world we live in many times if your phone is not working

10  you're going to be offered to trade in or trade up, and that

11  may be -- I'm not trying to put words in the plaintiff's

12  mouths but that may be what happened to two out of four and

13  then for purposes of class cert they could make whatever their

14  application is but if their phones froze as a result of trying

15  to update and then they were told they could either pay X

16  amount or Y amount and they chose Y because it's cheaper and

17  traded in their phone I think they might still be able to be

18  in the class and you're just going to have to live with that

19  uncertainty.

20          MS. GORDON:  Well, first of all, we had had a

21  conversation with the plaintiff's counsel who had agreed to

22  dismiss the claims of one of the plaintiffs who could no

23  longer find her phones and we think it's because we don't know

24  how we can possibly test the veracity of the statement that it

25  all of a sudden stopped working solely because of the

10

1   download.

2        THE COURT:  Well, either somebody believes her or

3   they don't believe her.  If she was signed up at some point --

4   look, I'm not going to oppose them narrowing down the case.

5   If they want to drop everybody who gave in their phone I'm not

6   going to fight them on that, and if there's one plaintiff in

7   particular that says enough, I don't want to be in this any

8   more or they don't believe that they have enough to pursue but

9   it's frequently the case that one person has one version of an

10  event and the other person has a different version of the

11  event and credibility is something that can be a basis for an

12  action.  I don't see why them not having their phone if

13  they're going to testify they had the phone, the phone was

14  working fine, they then were told to do an upgrade.  They did

15  the upgrade and the phone froze and they traded it in at

16  whatever -- and they have some proof.

17       MS. GORDON:  That's the question, Your Honor.  What

18  proof do they have of that?

19       THE COURT:  Their testimony, records on their credit

20  card bill that says they got a new phone on such and such a

21  date soon after the upgrade.  I don't know.  I'm not here to

22  make their case for them.  But I'm quite confident that

23  they're not going to drop everybody who didn't retain their

24  phones.

25       MS. GORDON:  So what about this scenario, Your

1   Honor?  The named plaintiff who after the lawsuit has been

2   filed -- so the lawsuit is public knowledge.  That person has

3   an obligation to retain evidence related to his or her claims.

4   If that person then doesn't retain the evidence that is

5   critical phone we have a spoilation motion for that.

6          THE COURT:  Presuming that they held onto it until

7   they filed the lawsuit.  If they -- in the scenario I was --

8   again, I'm not the lawyer for the plaintiff.  I'm not trying

9   to make their case but if somebody is told okay, your frozen

10  phone you could hold onto it and pay $1,000 to get a new phone

11  or you could give us your old phone and only pay half the

12  price I would think that that plaintiff trading in that phone

13  by their testimony and by showing some other documents they

14  still had to get a new phone at some point.  There's got to be

15  some record of whether that was an upgrade and there was a

16  turn in of a phone or not.  I still think that they'd be able

17  to make out their claim by their testimony and other records.

18         MS. GORDON:  And I think that we have a valid

19  spoilation motion with regard to one of these named plaintiffs

20  that were --

21         THE COURT:  One of them.  But I'm saying I don't

22  think that it completely eliminates the possibility that they

23  may have plaintiffs that did not retain their phones that may

24  fall under a class that's certified at a later date by Judge

25  Johnson.  This issue is not being brought to me.  I'm just

1   trying to set parameters for discovery.

2           So if what you're saying is one of the named

3   plaintiffs had the phone, filed the lawsuit, and then got rid

4   of the phone I think you're entirely correct.  That would be a

5   problem.  But if they didn't have the phone and they filed the

6   lawsuit because they were forced into this either traded in or

7   hold onto a useless phone thinking that someday I'll bring a

8   lawsuit about it that I think is a different scenario.

9           MS. GORDON:  Well, I think we can debate the various

10  scenarios and --

11          THE COURT:  I think there's only two.  They either

12  have the phone or they don't have the phone.

13          MS. GORDON:  Well, so, for example, in what you just

14  said, I'm not sure in that scenario who did the forcing.  It

15  certainly wasn't Apple and Apple is now being --

16          THE COURT:  I'm not saying forcing.

17          MS. GORDON:  Apple --

18          THE COURT:  I didn't say force.

19          MS. GORDON:  Apple is now being deprived of any

20  ability to sort of mount various defenses.  There's

21  numerous --

22          THE COURT:  Again, I'm not saying that you do not

23  have the ability to mount whatever defense you want.  My

24  theory here is that we can't delay discovery to wait and

25  figure out every uncertainty.  We just can't.  We got to move

13

1   this case forward and when you make spoilation motions that's

2   going to be down the road.  It's not now.  It's not now.  We

3   haven't even really started discovery yet.  You're not going

4   to stop discovery from going forward.  If they have a client

5   that they believe is not going to represent the class well and

6   she wants to or he wants to withdraw his claim that's up to

7   them.  I don't think you're going to argue and I'm not going

8   to argue against somebody voluntarily discontinuing their

9   case.  Why would you?

10          MS. GORDON:  I would not argue against that, Your

11  Honor.

12          THE COURT:  Okay.

13          MS. GORDON:  Your Honor, we're not asking you to

14  unnecessarily delay discovery.  The plan that we wanted to

15  present to you today is as follows.  We have discovery

16  deadlines that are coming up.  We're responding to their

17  document requests.  They're responding to ours and our

18  interrogatories.  Those are due on the 18th and 19th of this

19  month respectively.

20          To try and move this case along because we know that

21  has been the direction from Your Honor, we have actually

22  started meeting and conferring proactively before the deadline

23  for discovery so we can try and work through the issues and

24  narrow the ones that are going to have to be presented to Your

25  Honor.

14

1          THE COURT:  Gold star, Ms. Gordon.  Go ahead.

2          MS. GORDON:  Be that as it may, and we are working I

3   think well to try and get resolution of some of these issues

4   and we will try to -- I think we'll resolve some of them.

5          THE COURT:  It's good for both your clients.

6          MS. GORDON:  It's good for everybody.  Agreed.

7          There will, however, be undisputedly a couple of

8   issues that we can't resolve.

9          THE COURT:  What I will do in this case as I do in

10   other big cases is I'll set another conference.

11          MS. GORDON:  So that's what we were suggesting

12   because we can't --

13          THE COURT:  But I need a deadline so that I put a

14   little fire under this pot and make everybody move because

15   otherwise there will be eight million other reasons every time

16   we meet that we can't get to the deadline, to the end of this

17   which is really the motion for class cert.  Everybody knows if

18   they do not get class cert it's a whole different game and if

19   they do get class cert then we're probably going to be talking

20   about some way to try to on consent resolve the case.

21          MS. GORDON:  Agreed, Your Honor.  So what we were

22   suggesting is that we have a proposed breaking schedule for

23   Your Honor.  We will put deadlines so that if we cannot come

24   to a negotiated resolution of our disputes we will put them in

25   front of Your Honor by May 7th and we will response to each

1    other's letters by May 10th so that all of our discovery

2    disputes will be teed up before Your Honor at that time.  This

3    way when we come back to you for the next conference we will

4    know what the scope of the remaining document collection and

5    production is going to be so that we can stand in front of you

6    and give you a realistic date for we think we can have

7    everything produced by X.

8              THE COURT:  I don't mind you trying to meet and

9    confer.  That's something I applaud.  And I don't mind you

10   coming up with proposed dates to put it back on in front of

11   me.  I can't live with the dates you've given me because I

12   have criminal duty soon after --

13             MS. GORDON:  Okay.

14             THE COURT:  -- and then I have a planned week away.

15   So I can't put it off to the dates that you told me.  I could

16   adjust it so that we can try to get something done before I

17   have my arraignment duty.  So this is what I'm going to say.

18   I do think that the fact discovery class cert -- fact and

19   expert because you have all these experts that you're

20   conferring with regarding the testing and the software and the

21   hardware.  So I'm not splitting it into fact and expert

22   discovery for the first phase which is to get to the motion

23   for class cert.  You need your experts now.  You can't do this

24   like a usual personal injury case where you first go to

25   liability and then only then go to what the damages and hire

16

1   your experts.  Your experts are key for establishing whether

2   there is any liability or there is any viability of the claim.

3           So I'm not going to bifurcate that way.  I'm going

4   to say August 17th which is the date that you gave me for

5   discovery relevant to class cert.  I'm taking out the word

6   fact.  That means you should get all discovery that you need

7   for any motion.  Since that's August 17th I'll then give you

8   two weeks until August 31st to do any premotion conference

9   request to Judge Johnson in accordance with his rules so that

10  you're getting on his radar.  He could always refer anything

11  to me that he wants but I can't make a schedule for him.  I

12  can only make a schedule for what you need to put in front of

13  him so that he could either see you for a premotion

14  conference, refer it if he wants to refer it or whatever he

15  wants to do with the case.

16          So I'm keeping those dates which were from your

17  second revised 26(f) report.  August 17th for all discovery

18  relevant to class cert.  August 31st for any premotion

19  conference request to Judge Johnson.

20          Working backwards you were giving me dates during

21  May 7th.  I would like any -- so this is how I've done it in

22  the other large cases that I'm overseeing.  I set the date

23  when you're going to appear before me.  You could agree.  I

24  need two days at least for any reply.  So it could move it

25  back.  I could see you on -- I could see you on the 8th, 9th

1   or 10th of that week and that would mean that somebody would

2   have to get me their papers at the end of the preceding week

3   which is the first week of May and somebody could get the

4   response to me by a couple of days before.  That's what I

5   could do to try to accommodate the schedule you gave me but I

6   can't push it into my criminal duty week.

7          MS. GORDON:  Thank you, Your Honor.  May 10th works

8   for me.

9          THE COURT:  And for you?

10         MR. GRUNFELD:  That works for me, Your Honor.

11         THE COURT:  Okay.  So I can do this.  All of my

12  morning conferences are by phone.  Why don't I put this on at

13  noon on that date.

14         MS. GORDON:  Sure.

15         THE COURT:  Does that work for you?

16         MR. GRUNFELD:  Yes, Your Honor.

17         THE COURT:  And that -- now let's count backwards.

18  So I would like the responsive papers.  Sometimes it's better

19  just to give you one date that you both give me your dueling

20  arguments by because you're going to met and conferred.  So

21  you're going to know what objections there are.  I need that

22  by May 7th in order to prepare it.  That gives you as much

23  time as you were asking for.  It's just giving me less time

24  and you're not going to be responding in writing to each

25  other.  You're going to be alerting me to what your problems

18

1   are and then when we meet on May 10th we'll be able to address

2   those claims and work through them.  That is the, from my

3   perspective, the biggest difference between proceeding in the

4   Eastern and the Southern is I generally will not be writing

5   long winded opinions about discovery.  I do not have the time.

6   I'll meet with you.  I'll discuss these matters.  Any cases

7   you want to cite to me, give them to me when you're presenting

8   what the issues are.  I'll have reviewed everything by the

9   time of the conference and I'll be prepared after hearing your

10  argument to put something on the record and move us along.

11          So don't get stuck and my feelings won't be hurt if

12  you say we've worked everything out and you write to me on May

13  7th and we cancel the May 10th although that is not been

14  typically what happens.  Usually we use these as status

15  conferences to move the case along.  Okay.

16          So I'm putting it on for a twelve noon conference on

17  May 10th.  I've adopted a deadline for the parties to complete

18  all discovery relevant to class certification which is August

19  17, 2018 and any request for a premotion conference to Judge

20  Johnson regarding certification of a class August 31st.

21          I do take you at your word that you are moving

22  forward and making progress.  I do understand that there are

23  problems with who has the phone, who doesn't have the phone.

24  You're going to have to make your own decisions about how to

25  proceed in the case.  You hear what you're going to be up

1  against if you're dealing with somebody who purposefully or

2  negligently got rid of their phone after the action was

3  started.  I've made an argument which again I don't know if it

4  will hold any water but if people were told they could trade

5  in and save money, if that's something you can document I

6  don't know why that would completely take away their claim but

7  if they did it after the case was filed that is an issue and

8  you're going to have to deal with it.

9       Mr. Grunwald [sic], was there anything else that

10  needed to be addressed -- Grunfeld, I'm sorry.  Was there

11  anything else that needed to be addressed today on behalf of

12  plaintiffs?

13       MR. GRUNFELD:  Two things, Your Honor.  Not new but

14  following up on our discussion.  One is I would just note that

15  we're still in fact discovery so I don't want to represent

16  facts that we're still figuring out but it seems that there

17  should be a difference between a plaintiff who might have

18  traded in their phone before they were involved in the case

19  because there were several rounds of complaints in the case

20  and plaintiffs were added at different times.

21       THE COURT:  Can I just put it to you this way?  This

22  is a 2015 case.  So if today in 2018 you're not even sure what

23  the best way to proceed on behalf of a class of people who are

24  owners of Iphone 4 telephones who were harmed when their

25  devices were updated to the IOS 9 platform and therefore could

20

1  not use their phones.  If you don't know now, when are you

2  going to know?

3        MR. GRUNFELD:  Understood, Your Honor.  My

4  impression is that at least one of the plaintiffs who does not

5  have her phone traded it in after the complaint was filed but

6  before she was part of the case.

7        THE COURT:  I cannot solve these conundrums for you.

8        MR. GRUNFELD:  Understood.

9        THE COURT:  They are conundrums.  Apple is not going

10  to go down lightly.  You have to decide what it is you're

11  going to do.  There may be many more people like that

12  plaintiff who are out there in the country and you may make

13  the calculated bet that you should keep this person in but

14  they're going to fight you.  You've heard it today.

15  Spoilation.  I'm not going to let discovery get bogged down.

16  I'm going to push us through to the deadline that I just set

17  so Judge Johnson can hear the motion for certification of the

18  class.  If he certifies the class whether she's in, she's not

19  in, there will be something we can do with this case.  Right

20  now we're just going to keep spinning until we get to that

21  class cert.

22        MR. GRUNFELD:  Understood, Your Honor.  I just

23  wanted to clarify that point but I agree.

24        THE COURT:  Well, you're not conceding but you need

25  to think about these issues and I can't solve them for you.

1           MR. GRUNFELD:  Understood, Your Honor.

2           THE COURT:  Anything further, Ms. Gordon, on behalf

3    of defendants?

4           MS. GORDON:  Yes.  I'd just like some clarification

5    with regard to some items within the schedule that we set

6    today because we now have moved expert reports into that

7    August 17th date.  As Your Honor may recall, there was a bit

8    of a disagreement previously as to whether we were going to

9    proceed with the schedule being plaintiff's expert,

10   defendant's expert which was Apple's suggestion, and the

11   plaintiff's nomenclature was affirmative in rebuttal.  I

12   believe that during our conversations in our meet and

13   conferred we've now agreed to plaintiff -- to Apple's

14   nomenclature, plaintiffs and then defendant's as long as you

15   all get a rebuttal.  Is that correct?

16          MR. GRUNFELD:  That's what we had discussed

17   previously although I'm not -- the schedule might affect --

18          THE COURT:  Let me just say --

19          MS. GORDON:  I was going to ask for deadlines.

20          THE COURT:  -- you have until May when we are next

21   meeting, May 10th, to discuss those issues.  That still gives

22   you plenty of time if you disagree to raise it to me again --

23          MS. GORDON:  Okay.

24          THE COURT:  -- because we're talking about an August

25   17th deadline.  Both sides acknowledged to me that they have

22

1   an independent expert keeping custody of the phones, that they

2   have both retained their respective experts.  So we're not

3   talking about we need to know if they're going to do it, who

4   we're going to retain.  You both have experts.  Plaintiff is

5   getting a report where he is talking about geekbench testing.

6   He said there's both the software and the hardware that we're

7   going to have to test.  I'm saying move this forward.

8        MS. GORDON:  My only caveat to that, Your Honor, and

9   I agree with what you just said, one caveat is I understand

10  that the plaintiffs are going to have other experts as well.

11  So, for example, a damages expert.  So my concern is making

12  sure we understand the timing and the sequencing of a damages

13  expert.

14        THE COURT:  I think that's fair, Ms. Gordon, but if

15  they don't get a class and they don't certify I don't know why

16  they would be now engaging damages experts just like I talk

17  about in car accidents that if we could save the money and

18  front load whether we could get a resolution before we invest

19  but if you believe that it's essential for your client to know

20  what they're dealing with for them to get a damages expert

21  prior to asking for class cert, if that's what you're asking

22  them to do --

23        MS. GORDON:  I'm saying under Rule 23 I think they

24  need to have a damages expert to meet their burden to get a

25  class certified under Rule 23.  It's not something I want or

1   diswant -- do not want.  It's something that I think the

2   plaintiffs have understood and accepted under Rule 23 they

3   need.

4           THE COURT:  I guess in my mind I don't know what the

5   new phones people were purchasing cost them.  I don't know if

6   that's what the range of damages are going to be or if people

7   are going to make some other type of claim but if they're

8   making other types of claims I think it's harder for them to

9   say that it should be certified as a class.  So if everybody

10  is going to say well, it cut into my business because I had to

11  take X amount of -- I'm trying to figure out what a damages

12  expert in a case like this would really be important for.

13          MS. GORDON:  But I mean if they are going to present

14  a damages expert for class certification we obviously have to

15  have an opportunity to test that before a class certification.

16          THE COURT:  Absolutely.  I'm just trying to think

17  of -- because I've had other big cases, trademark or copyright

18  where it's important to know what the theory is that they're

19  going on.  So I understand where you're coming from.  But I'm

20  just saying that for the class cert purpose it doesn't seem

21  like you're going to have to do a whole lot extra than what's

22  required under Rule 23.  Are you saying that we have to have

23  some other type of expert at this point?

24          MS. GORDON:  Look, the burden is on the plaintiff

25  under Rule 23.  It's not my burden.  He has to meet it and we

24

1  will respond to what he does in due time.

2          THE COURT:  You just want time and notice and the

3  opportunity so that it's set forth in the schedule.

4          MS. GORDON:  Correct, Your Honor, yes.

5          THE COURT:  By the next conference on May 10th that

6  should have been discussed and you can preview if there's any

7  dispute.  Okay?

8          MS. GORDON:  Okay.  Thank you.

9          THE COURT:  Mr. --

10         MR. GRUNFELD:  Your Honor --

11         THE COURT:  Yes.

12         MR. GRUNFELD:  I'm sorry.  On a scheduling note is

13  that a little on the personal side, I'm actually expecting a

14  baby in mid to late July.

15         THE COURT:  Congratulations.

16         MR. GRUNFELD:  Thank you.  So I --

17         THE COURT:  Mr. Grunfeld, there is Jeremy Lieberman,

18  there's Shimon Yitfach, there's Peretz Bronstein.  Those are

19  three other lawyers listed on this.  I'm very happy you're

20  having a baby.  I don't want to take you away from your baby

21  but you better talk to your partners about how they're going

22  to cover their obligations.  Okay?

23         MR. GRUNFELD:  Yes, Your Honor.

24         THE COURT:  Thank you.  Anything else that needs to

25  be addressed?

25

1          MR. GRUNFELD:  No.

2          THE COURT:  Anything else that needs to be

3  addressed?

4          MS. GORDON:  No.

5          THE COURT:  I will see you back on May 10th.  Thank

6  you very much.

7          MS. GORDON:  Thank you, Your Honor.

8          MR. GRUNFELD:  Thank you.

9  (Proceedings concluded at 3:15 p.m.)

10                        *  *  *  *  *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1        I certify that the foregoing is a court transcript from

2   an electronic sound recording of the proceedings in the above-

3   entitled matter.

4

5                                        _____

6                                            Shari Riemer, CET-805

7   Dated:   April 9, 2018