UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
LERMAN,                            : 15-cv-07381-SJ-LB
         Plaintiff,            :
                                  :
    - versus -                    : U.S. Courthouse
                                  : Brooklyn, New York
                                  :
APPLE INC.,                        : May 10, 2018
            Defendant          :
------------------------------X

TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE

**A P P E A R A N C E S :**


**For the Plaintiffs:**       **Michael Grunfeld, Esq.**
                                  Pomerantz LLP
                                  600 Third Avenue
                                  20th Floor
                                  New York, NY 10016

                                  **Peretz Bronstein, Esq.**
                                  Bronstein, Gewirtz &
                                  Grossman, LLC
                                  60 E. 42nd Street
                                  New York, NY 10165

**For the Defendant:**       **Keara M. Gordon, Esq.**
                                  **Daniel C. Harkins, Esq.**
                                  DLA Piper
                                  1251 Avenue Of The Americas
                                  27th Floor
                                  New York, NY 10020

**Transcription Service:**   **Transcriptions Plus II, Inc.**
                                  61 Beatrice Avenue
                                  West Islip, New York 11795
                                  laferrara44@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1          THE CLERK:  Civil Cause for Status Conference,

2    docket number 15-cv-7381, Lerman v. Apple Inc.

3          Will the parties please state your names for

4    the record?

5          MR. GRUNFELD:  Michael Grunfeld from Pomerantz

6    on behalf of the plaintiffs.

7          MS. GORDON:  Keara Gordon from DLA Piper on

8    behalf of defendant Apple.

9          MR. HARKINS:  Good morning.

10         Daniel Harkins of DLA Piper, as well, on behalf

11    of defendant Apple.

12          THE CLERK:  The Honorable Lois Bloom presiding.

13          THE COURT:  Good afternoon, Mr. Grunfeld, Ms.

14    Gordon and Mr. Harkins.  Please be seated.

15          This is  status conference in plaintiff's

16    action alleging that defendant engaged in deceptive trade

17    practices and false advertising in violation of the New

18    York General Business Law and the New Jersey Consumer

19    Fraud Act.

20          When I last saw the parties in the case on

21    April 19th, 2018, the Court at that time sent an August

22    17th, 2018 deadline to complete all discovery relevant to

23    class certification and I directed the parties to file

24    any pre-motion conference request regarding the motion

25    for class certification to Judge Johnson by August 31st.

3

Proceedings

1    The parties requested a month to meet and
2 confer regarding the next steps in testing the phones and
3 to work out an internal discovery plan between the
4 parties and I was very gratified when defendant's counsel
5 wrote to notify the Court that all but one discovery
6 issue has been resolved.
7    Defendant is moving to compel plaintiffs to
8 provide discovery concerning their involvement in past
9 litigation, including any action where plaintiffs have
10 been named as a defendant, testified as a witness, or
11 provided sworn testimony.
12    And plaintiff's object to the request as
13 harassing and over broad and responded only so far as to
14 share that Lerman was part of a traffic or driving
15 related matter and Williams was part of various legal
16 proceedings over a decade ago and a recent administrative
17 financial matter.
18    In an effort to resolve the matter, the
19 defendant requested a privilege log listing minimal
20 information about each plaintiff's involvement in
21 litigation and they said that would be sufficient to
22 inform them whether or not they needed to seek out
23 additional information.
24    So both sides do agree that the information is
25 subject to whether or not it's relevant for the class

4

Proceedings

1   certification decision.  And I read through both sides

2   papers and I am open to hearing from both sides, but

3   basically my view of it is that the adequacy inquiry

4   under 23(a)(4) is only to uncover conflicts of interest

5   between the named parties and the class they seek to

6   represent and that you can't ask for litigation history

7   just go to on an expedition.  It has to have direct

8   bearing on their reliability or credibility in the

9   instant case.

10          I will note that in reading both side's cases,

11   I thought that the cases that you ha given to me, Ms.

12   Gordon and Mr. Harkins were a little bit far afield.  Why

13   do I say that?  One case was from the Northern District

14   of Illinois and it dealt with DUI convictions and the

15   other was from the Middle District of Florida, where the

16   Court found that the class representative's personal

17   bankruptcy implicates his credibility and therefore his

18   adequacy as a class plaintiff because the plaintiff had

19   knowingly failed to list the claims as an asset in the

20   bankruptcy proceeding.

21          So this is not a bankruptcy case.  It's not a

22   DUI case.  We're not in the Northern District of

23   Illinois.  We're not in the Middle District of Florida.

24          When I see that somebody is reaching -- because

25   the Southern District and Eastern District have plenty of

5

Proceedings

1  cases that are talking about class adequacy, ,so if you

2  would like to be heard on that, I will be glad to hear

3  you on it.

4           MS. GORDON:  Thank you, your Honor.  So we do

5  believe that it is appropriate to give Apple some

6  discovery into the past litigation and with all due

7  respect, we don't think that it just goes to conflict of

8  interest between the named plaintiffs and the class.

9  There is a large body of case law, Savino from the Second

10 Circuit is one such case, that talks about assessing the

11 credibility of a named class representative as part of

12 the adequacy inquiry.

13          Now, yes, we talked about DUIs and bankruptcy,

14 your Honor, but I don't know what the facts are here.  I

15 don't know what the named plaintiff's litigation history

16 is.  That's what we're trying to find out.  I can't tell

17 you that what we're going to find is going to fit into

18 this case or that case because I don't know what it is.

19          And it does pertain to credibility if there is

20 certain types of cases that are out there.  For example,

21 subsequent to the letters that were sent, we did locate

22 another case which is Maddox & Starbuck, Ltd. v. British

23 Airways, 97 FRD 395, which is a case from the Southern

24 District of New York in 1983.  And there, the district

25 court held that the criminal conviction of the

6

Proceedings

1   plaintiff's principal precluded it from qualifying as a

2   class representative.  We don't --

3           THE COURT:  So you're really looking for

4   criminal history here.

5           MS. GORDON:  I don't know what's there, your

6   Honor.  And I --

7           THE COURT:  That's what you're really looking

8   for though?

9           MS. GORDON:  Well, I will give you an -- I

10  think if there was criminal --

11          THE COURT:  I'm asking a direct question.

12          MS. GORDON:  That is one of the things, your

13  Honor.  Yes.

14          THE COURT:  Because gain, if we're looking to

15  something in 1983 and again, I haven't read the case

16  because you're just citing it to me, 1983 is before there

17  were electronic databases.  You couldn't do research for

18  public records the way you can now.  There was no email

19  in 1983.  People were still using floppy disks and

20  typewriters.  We're talking about a different era.

21          And so that's why I am saying you're really

22  reaching here when you're citing me cases that are 25

23  years old, 35 years old -- I'm sorry, not 25, 35 years

24  old.

25          MS. GORDON:  Let me clarify, that was a case

7

Proceedings

1   that goes to the question of whether that particular

2   named plaintiff was adequate or not.  I mean, there's two

3   questions here, right?  There's --

4            THE COURT:  But having a criminal conviction

5   does not make somebody inadequate for class

6   representation.  All of the cases you cited to me, Ms.

7   Gordon, was where the credibility was in relation to the

8   past litigation, not that somebody had a criminal

9   conviction 25 years ago.  Plaintiffs had mislead a court

10  or misrepresented something on a record and that was why

11  those cases were relevant for purposes of consideration,

12  whether they could be a class representative.

13           There is no law that says if somebody had a

14  misdemeanor conviction, or some other conviction on the

15  record, yes, if it's a felony and it goes to

16  truthfulness, it should be revealed.

17           But if there are other types of things on

18  people's records, it doesn't necessarily mean that they

19  will not be an adequate class representative.

20           MS. GORDON:  But --

21           THE COURT:  If you do care about convictions

22  that relationship to credibility or concerns about

23  misrepresenting the record, then it should be limited to

24  that.  Had there been any convictions regarding fraud?

25           MS. GORDON:  Well, we asked if there were any

Transcriptions Plus II, Inc.

8

Proceedings

1   criminal convictions and the plaintiffs refused to

2   provide that information, that's number one.

3         THE COURT:  But criminal convictions is broader

4   than saying does it relate to fraud.

5         MS. GORDON:  Well, your Honor, I think there's

6   two questions here, right?  One is the ultimate question

7   with regard to whether that particular conduct creates an

8   inadequacy of the named plaintiffs such that the class

9   certification is inappropriate.  That's the ultimate

10  question that we will place before the judge.

11        What we're talking about here is do we even get

12  to learn what the facts are.

13        THE COURT:  I understand that but in my mind,

14  again they're bringing a case about whether or not Apple

15  gave them information when they were told that that there

16  was a new operating system they could update to and would

17  they want that to be updated on their phone?  Relevancy

18  has to be the action that we have here.  And when you're

19  asking broad questions, I do understand that it's because

20  of class certification which we're looking at down the

21  road, I get that but people should not be inhibited from

22  being plaintiffs in actions because Apple is going to go

23  after them and pick them apart, so if they were 18 and

24  they got convicted for a marijuana possession, that's

25  going to be made a big deal of.

9

Proceedings

1      They're now 58 and they work at a big bank and
2  you're going to make a big deal that they at 18, had a
3  marijuana conviction.
4      MS. GORDON:  To be clear, your Honor, we have
5  told the plaintiffs from the very first time we had this
6  conversation that we have no desire to embarrass or
7  harass anybody.  If they tell us the information, and it
8  is not relevant, then that's it.
9      THE COURT:  But they're --
10     MS. GORDON:  But we do feel that we are
11  entitled --
12     THE COURT:  -- feeling --
13     MS. GORDON:  -- to the information.
14     THE COURT:  But they are feeling like you are
15  asking this information for the purposes of harassment.
16     MS. GORDON:  We are asking the information --
17  for the information, your Honor, because they have
18  decided to initiate a lawsuit in which they named
19  plaintiffs and when they decide to become named
20  plaintiffs, your Honor, they become fiduciaries for the
21  class.
22     THE COURT:  And I et that and in every other
23  case that you cited to me, somebody was previously
24  convicted of fraud under the same statute that he was
25  seeking to prosecute defendants, that was the Weissman

Proceedings

1   case.  That was a securities fraud case.

2          I mean again, every single case that you cited

3   to me where the named plaintiff was seeking relief under

4   the same statute he had been found to have violated,

5   that's when you got that access to information.

6          Here, you're looking for litigation history

7   that isn't related to what the subject matter of this

8   lawsuit is and that's why I am having a problem in saying

9   that should be required to identify all past litigation

10  because to be quite frank, it is a very broad request.

11  It isn't a narrowly tailored request.

12         MS. GORDON:  A couple of things, your Honor.

13  First of all, we did attempt to minimize the burden by

14  suggesting that we do this little mini-privilege log.

15  Just give us the basic information and then we can see

16  what we can find from there.  That's number one.

17         Number two, I don't think you can necessarily

18  say that it is only, you know, consumer fraud class

19  actions that you need to look at and I will give you an

20  example.  It would certainly be relevant to the

21  credibility and the adequacy of the named plaintiff if a

22  court had found that they filed a frivolous lawsuit some

23  place.

24         We had an instance in another case where we

25  found that a witness had filed a frivolous lawsuit.

11

Proceedings

1          THE COURT:  How did you find that?

2          MS. GORDON:  Well, I mean, we -- yes.

3          THE COURT:  You went on the public databases,

4   you ran the people's name.  I guarantee it wasn't through

5   a discovery request.

6          MS. GORDON:  Well, that's true, your Honor, but

7   that doesn't mean that in this case it exists in some

8   state court that we can't get.  I mean, we have done our

9   public record search, absolutely.  We're not asking him

10  to recreate our public record search.

11         THE COURT:  But what you have asked for here

12  and I am looking at Williams' interrogatory number 11,

13  you asked where plaintiff's served as a -- where any of

14  these named plaintiffs served as a plaintiff or in any

15  other representative capacity.  That's in the request 33

16  served as a plaintiff in any --

17         MS. GORDON:  And they've agreed to provide

18  that.

19         THE COURT:  -- litigation, that's request

20  number 4.  Served as a defendant in any litigation,

21  request number 35.  Testified in any litigation, how

22  could that possibly discredit them here if they

23  testified?

24         MS. GORDON:  If they testified on matters that

25  are related to iPhones or something that -- that could

12

Proceedings

1  be --

2          THE COURT:  So why didn't you ask that?  Did

3  you ever testify in any litigation on matters related to

4  iPhones?

5          MS. GORDON:  Because we wanted to be more broad

6  because I don't know what's there.

7          THE COURT:  Well, but that's why you're before

8  me because I am not going to allow you to be able to ask

9  everything that isn't relevant to this particular case.

10  You have providing sworn testimony in any action.

11          If they had a child custody dispute, you

12  already said you wouldn't be interested in it.  You said

13  that.

14          MS. GORDON:  Yes.

15          THE COURT:  But you would want to know about it

16  and you're not even entitled to know about it because

17  this is about whether or not Apple when it updated its

18  phones, gave the sufficient notice and warning to these

19  plaintiffs that it might have repercussions.

20          MS. GORDON:  But it's also about whether the

21  three named plaintiffs who are going to try and prosecute

22  that claim as fiduciaries for the unnamed class members,

23  are credible and trustworthy and honest and meet the

24  requirements of Rule 23.

25          THE COURT:  And that doesn't mean that you get

13

Proceedings

1   them to pull down their pants.

2          MS. GORDON:  I'm not asking for that, your

3   Honor.

4          THE COURT:  Well, that's why I was suggesting

5   to you that having this sort of broad language testifying

6   in any litigation is too broad for me then.

7          MS. GORDON:  I understand.  I understand.

8          THE COURT:  I will cite to you from who is one

9   of I think the most excellent newish, because not so new

10  anymore -- oh, I thought it was an Englemeyer case, it's

11  actually not such a new judge, in Judge Crotty in 295 FRD

12  87, Keln, K-E-L-N, v. World Financial Network National

13  Bank, when talking about the fair and adequate

14  representation under Rule 23(a)(4) states, Unlike the

15  class representatives in Weissman, Keln, "does not have

16  the troubling traits that suggests this case is lawyer-

17  driven litigation by a manufactured plaintiff out to make

18  a quick buck."  That'S what he thought, Judge Crotty,

19  who was the Corporation Counsel of the City of New York,

20  was part of what Weissman was getting at. That the

21  plaintiffs were manufactured and that there was a problem

22  with the adequacy and whether or not that was a credible

23  plaintiff.

24          But again, I understand that you're saying you

25  lack the knowledge and that's what you're looking for,

14

Proceedings

1  the information to be able to discern whether or not

2  these plaintiffs are adequate class representatives but I

3  am saying that it has to be tailored to fit the case.

4          MS. GORDON:  I understand that, your Honor, and

5  that's -- we are perfectly happy to have a conversation

6  with the plaintiff's counsel and --

7          THE COURT:  So let me hear --

8          MS. GORDON:  -- so tailored those requests.

9          THE COURT:  Let me hear from plaintiff's

10 counsel.  Mr. Grunfeld?

11         MR. GRUNFELD:  Thank you, your Honor.  So

12 plaintiffs agree with your Honor's description of these

13 requests and the basic --

14         THE COURT:  But that's not to say that they're

15 not entitled to some information.  This is discovery.

16 You have dropped one of your plaintiffs already.  They

17 don't know why you dropped that plaintiff.  They're happy

18 you dropped that plaintiff.

19         But again, they're poking around to see if

20 there's anything about these plaintiffs that should

21 disqualify them from being class representatives.

22         MR. GRUNFELD:  I understand, your Honor, and

23 plaintiffs have agreed to provide responses to document

24 request 33 and 34 which ask about other instances where

25 they have been or sought to be a class representative in

15

Proceedings

1   other similar types of information.

2            So plaintiffs agree to provide information like

3   that that --

4            THE COURT:  Have they served as class reps in

5   other cases?

6            MR. GRUNFELD:  As far as I know, they have not.

7            THE COURT:  And as far as if we were to get a

8   more limited request or perhaps, you know, some top of

9   log.  I'm not saying the full information that defendant

10  was asking for, but would that be something that the

11  plaintiff could live with?

12           MR. GRUNFELD:  I mean it really depends on the

13  level of detail.  So the requests were extremely broad

14  and even once --

15           THE COURT:  I agree.

16           MR. GRUNFELD:  -- even while as we were

17  discussing them, it just didn't -- Apple didn't narrow

18  what it was seeking in a way that plaintiffs would have

19  been comfortable giving information.

20           So for example, my understanding from when we

21  were having our meet and confer about it was Apple didn't

22  ask whether the plaintiffs had ever been convicted of a

23  crime.  They asked if any of the incidents that

24  plaintiffs were ever involved were criminal in nature,

25  which is obviously a much broader question.

16

Proceedings

1          So plaintiffs might be willing to give

2  information in response to more tailored questions that

3  are actually related to the issues in this case.  It

4  depends on what those questions are.  But the request as

5  it presently stands is just too broad and until we know

6  what the specific requests are, it's impossible to say

7  whether the plaintiff are comfortable.

8          THE COURT:  Well, what I would like, as you

9  were able to narrow down all the other disputes, I would

10 like there to be a compromise that could be worked out in

11 this case.  I don't think that they should be able to use

12 it for all purposes but in terms of being representative,

13 I do think that they will have some argument to be made

14 if they're prevented from getting any of this

15 information, that they weren't able to test, whether or

16 not these are adequate representatives and you don't need

17 to get to judge Johnson on a motion for class cert with

18 those sort of things being raised, that they never told

19 us if there were any convictions for fraud, for instance.

20 Because if there is a fraud conviction, that may be

21 something that would in Judge Johnson's mind, make

22 somebody less than desirable.  It doesn't mean any

23 conviction and I want to be clear about that because my

24 example of somebody when they were 18 who got arrested

25 for a marijuana or a protest and now they're 58, that

17

Proceedings

1   would not mean that every conviction needs to be revealed

2   but I do think as to things that may have troubling

3   traits, fraud, making false statements to a court, those

4   are things that I think they would be entitled to know

5   about.

6          I don't think that testifying in any litigation

7   is going to be something I would uphold.  I don't think

8   providing sworn testimony in any action is something I

9   would uphold.

10          Again, I have no idea what you were really

11  going for here.  I don't think many people testify or

12  provide sworn testimony but if they had to appear before

13  a grand jury because they were a victim of a crime, I

14  don't think you're entitled to know about that.

15          MS. GORDON:  And I agree.  I agree with that

16  last point, your Honor, about the grand jury testimony.

17  Our concern is we don't know when we make these requests

18  what the information is on the other side.

19          THE COURT:  But again you have to --

20          MS. GORDON:  So we have to sk the question.

21          THE COURT:  -- but you have to tailor it to the

22  litigation you have before is and although I agree with

23  you that if they are certified as class reps, that that

24  has a fiduciary component to it I think that you have to

25  limit whatever your questions are to discerning whether

18

Proceedings

1   or not this plaintiff is not suited to be a

2   representative because of either convictions that they

3   have, not arrests -- again, you're not entitled to know

4   about all the circumstances in people's lives,

5   convictions that involve, you know, fraud or other false

6   testimony but not testifying in a litigation.  If they

7   were involved in a landlord/tenant matter, they're a

8   landlord, you're not entitle to know everything about

9   these people.

10          MS. GORDON:  And I don't care about their

11   landlord/tenant matter.

12          THE COURT:  I know you don't but the way that

13   you ask the questions would encompass all of that.

14          MS. GORDON:  I understand, your Honor, and we

15   will work with plaintiffs.

16          THE COURT:  So again, you need to tailor it to

17   the making the false statements in a context that would -

18   - I understand you're saying that if it was filed in

19   state court and it was found to be frivolous, you would

20   not necessarily be able to find that in a Westlaw or a

21   Nexus search.  But the requests are much broader than

22   that.

23          MS. GORDON:  We will work with plaintiffs, your

24   Honor, as instructed.

25          THE COURT:  Because again, if you're limiting

19

Proceedings

1    it to exactly what you're telling me, then I would have

2    much less of a problem and I think Mr. Grunfeld would

3    have much less of a problem.  His client would be able to

4    probably quickly say no, no, no or hopefully they'll be

5    ale to quickly say no, no, no.

6           MR. GRUNFELD:  That's right, your Honor, and

7    one thing we would request is that we get the complete

8    list of these narrowly tailored questions because what we

9    want to avoid is a game of 20 questions where we give a

10   response and then Apple says oh, but what about this and

11   what about that?

12          THE COURT:  I have no problem with that.  I

13   will give you a couple of weeks to work this out.  If

14   not, you'll come back to me and say you weren't able to

15   work it out.  So I will give you dates by which they will

16   give you a new list and dates by which you will respond

17   to their new list and we'll do it -- it's not so much

18   left on your plates now.  I am confident that you'll be

19   able to work it out.  Okay.

20          So let's get dates.  There was nothing else

21   that was in the motion.

22          MR. GRUNFELD:  There was --

23          THE COURT:  Yes, Mr. Grunfeld?

24          MR. GRUNFELD:  -- there was nothing else in the

25   letters but there is -- there are two other things that I

20

Proceedings

1   wanted to raise and we --

2            THE COURT:  Yes.

3            MR. GRUNFELD:  -- if that's okay with your

4   Honor.

5            THE COURT:  Yes.  So by the 18th, which is next

6   Friday, you'll revise.

7            MS. GORDON:  It's our list, yes.

8            THE COURT:  Is that fine?

9            MS. GORDON:  Yes, your Honor, thank you.

10            THE COURT:  And then by the 29th, Mr. Grunfeld,

11   so I am giving you a little extra time.  It's a Memorial

12   Day weekend.  I don't want you there laboring away.  By

13   the 29th, you'll respond.

14            MR. GRUNFELD:  Yes.

15            THE COURT:  And that way, if I don't hear from

16   you, then I will know that this has gone away.  And if

17   you do want to contact me, I assume I will hear from you

18   sometime that week and I can put it on for another

19   conference, okay?

20            MS. GORDON:  Yes.

21            THE COURT:  Okay.  So the other issue?

22            MR. GRUNFELD:  So two other issues.  One is,

23   you know, plaintiffs are also pleased that we've resolved

24   all of the discovery disputes today other than this one

25   issue.  Having said that, discovery is ongoing and, you

21

Proceedings

1   know, until both sides exchange documents, it's going to

2   be tough to know whether issues arise related to what's

3   in those documents.

4            One issue that we've discussed with Apple that

5   is not really a dispute but that we wanted to raise to

6   the Court's attention is the case schedule.

7            So we have been working very hard since the

8   last conference to push discovery forward and plaintiffs

9   have been pushing Apple to give us a date by which Apple

10  will be done with their productions and Apple told us

11  yesterday that they plan to finish producing documents by

12  the end of June, if I got that correct.

13           MS. GORDON:  Uh-hum.

14           MR. GRUNFELD:  And if that's when we -- you

15  know, that's the date by which we finally have all of

16  Apple's productions, it's going to be very difficult, if

17  not impossible for us to finish our expert reports by the

18  current deadline because several things need to happen

19  that are keyed off of those productions.  Firstly, we

20  obviously need to review them.

21           THE COURT:  Have you discussed this with

22  Apple's counsel?

23           MR. GRUNFELD:  Yes.

24           THE COURT:  Have you come to an agreement?

25           MS. GORDON:  I don't know what he is about to

22

Proceedings

1  propose.

2           THE COURT:  I think he's asking for more time.

3           MR. GRUNFELD:  Well --

4           THE COURT:  I've heard the windup.

5           MS. GORDON:  Yeah.

6           THE COURT:  So I think that's what he is asking

7  for.

8           MS. GORDON:  We are in agreement that the

9  current schedule is --

10          THE COURT:  Tight.

11          MS. GORDON:  -- going to be difficult for us to

12 meet.

13          THE COURT:  So then I would like you to discuss

14 what would be the end.  Make it reasonable.

15          MS. GORDON:  Yes, your Honor.

16          THE COURT:  Because if you're padding it,

17 that's when you get into trouble with me.

18          MS. GORDON:  Yes.

19          THE COURT:  If you put in a consent letter and

20 tell me what it is that you need and why you need it and

21 it's on consent, I can agree to that.  I don't need to

22 hear the windup here, as long as you agree to it and you

23 both have thought it through because I won't keep doing

24 it.  I won't over and over approve a consent request to

25 extend deadlines, okay?

23

Proceedings

1          MR. GRUNFELD:  Yes.

2          THE COURT:  But I will certainly, if you need

3    and confer and it's for a good reason, then you just need

4    to give me a letter, okay?

5          MR. GRUNFELD:  Thank you, your Honor.

6          THE COURT:  Anything else, Mr. Grunfeld?

7          MR. GRUNFELD:  There is one other issues which

8    is this we have not discussed with Apple but I want to

9    raise the Court's attention --

10          THE COURT:  Well, that's always a hard thing

11    for me to hear because I think that you have a duty to

12    raise it with Apple first but since we're here, go ahead.

13          MR. GRUNFELD:  Well, I wanted to raise it just

14    for timeliness concerns.  So as you know, one of the

15    plaintiffs have dropped out of the case.  Apple has

16    raised to the Court and also in a discovery letter to us,

17    noted that they plan on making spoliation arguments

18    related to another one of the plaintiffs, so there's

19    possible class member that would like to seek to

20    intervene in the case and we would like to get a briefing

21    schedule for that and we can discuss that with Apple as

22    far as what I --

23          THE COURT:  So if I am hearing you correctly,

24    because somebody's dropped out, you want to put somebody

25    knew in their place, somebody who has not gotten rid of

24

Proceedings

1  their phone, I assume.

2         MR. GRUNFELD:  This person still has their

3  phone.

4         THE COURT:  And, you know, quite frankly, I'm

5  -- why do we need that, one?  Because you have to people

6  who didn't get rid of their phone and the first fight

7  that we had was how to get the expert to inspect the

8  phone.  And if we're starting up with another plaintiff

9  who is in the same shoes as the two that we already have,

10 why do we need them, that's one.

11        Two, if you were talking about somebody who

12 didn't have their phone, then we would have somebody who

13 already represents the people who didn't keep their

14 phone.  So if you are going to move for a class cert, my

15 question is why do we need to add plaintiffs in at this

16 point?  I understand somebody dropped out but you're

17 going to move for class cert.  That's the whole writing

18 on the wall here, that we're getting you to Judge Johnson

19 for a class cert.

20        MR. GRUNFELD:  Right, your Honor.  It's really

21 just to bolster the potential for class certification.

22 The case started with four plaintiffs.

23        THE COURT:  I'm not going to rule on any of

24 this and I am not even going to schedule a motion.  You

25 need to speak to your adversary.  My opinion is you're

25

Proceedings

1  going to slow yourself down and that's not what the Rule

2  1 of the Federal Rules says the expedient, least costly,

3  that's what the rules are there to ensure.

4           I think adding somebody when you're just going

5  to move for cert to bolster that you have other people

6  who kept their phone -- you have two people that kept

7  their phone.  They've already inspected their phones.  So

8  you add somebody in and now we need that new person's

9  phone to be inspected and then you have to produce all of

10 the same discovery materials that you've already

11 produced?  I don't really see why you would need that.

12 If it's a class action and the two people you have are

13 good, three doesn't make it better.

14          MR. GRUNFELD:  Well, your Honor, we can talk

15 about it further.  I mean, it's a -- it's essential to,

16 like I said, to bolster the potential for class

17 certification.

18          THE COURT:  Again, I have given you my initial

19 reaction to it.

20          MR. GRUNFELD:  Yeah.

21          THE COURT:  You can do whatever you want to do.

22 I don't think it's dispositive.  I think that you can

23 make that application to the Court but I want to tell you

24 that if I think you're just duplicating the efforts, I

25 guess it would have to be an R&R if I denied it

26

Proceedings

1  because it would be dispositive as to that person joining

2  but on the flip side of it, since you intend to bring it

3  as a class action, it may be just a futility because

4  under class cert, you would have enough people to protect

5  that extra person that you're using to bolster the

6  arguments of the two you already have.

7           MR. GRUNFELD:  I --

8           THE COURT:  So you have to give me Second

9  Circuit case law, not from Florida, not from Illinois,

10  about why if one person drops out in a class, the Court

11  should permit somebody else to jump in and it's not even

12  into the same shoes because this person still has their

13  phone.

14           MR. GRUNFELD:  I understand, your Honor.  And

15  we would obviously do that in the briefing.  For now what

16  I think makes sense is just to figure out a briefing

17  schedule that works for the parties.

18           THE COURT:  I don't think so.  This was not on

19  my agenda.  You didn't raise it to me.  I am not setting

20  a briefing schedule.  I am not encouraging plaintiffs to

21  do this.

22           If you want to bring it to the Court's

23  attention, you will.

24           MR. GRUNFELD:  I completely understand.  I just

25  meant it would make sense for the parties to discuss a

27

Proceedings

1   briefing schedule and then propose that to the Court.

2           THE COURT:  No, because they may not agree and

3   the cost of delay is something that I am worried about

4   here.  I am not giving you the time from the August 17th

5   deadline that I just said on consent I would give you, so

6   that you could add another plaintiff to bolster, which we

7   also call bootstrap, which always say we don't need that,

8   we don't need cumulative evidence of the same thing.

9           MS. GORDON:  And this is the first I've heard

10  of it, your Honor.  There was no mention -- I mean, we've

11  probably been on the phone for, I don't know, dozens of

12  hours in the past month but --

13          THE COURT:  Well, they've gotten my initial

14  reaction to it and, you know, quite frankly, I don't see

15  the need for it and I don't really want more motions.  I

16  want you to do discovery.  I was happy that you were able

17  to work out that one plaintiff dropped out, "c'est la

18  vie." That's how it goes.

19          MR. GRUNFELD:  I understand, your Honor.  So

20  we'll follow-up with the Court if we have follow-up on

21  this.

22          THE COURT:  Very good.  Anything else, Mr.

23  Grunfeld?

24          MR. GRUNFELD:  Nothing else.

25          THE COURT:  Anything further on behalf of

28

Proceedings

1  defendants Apple?

2          MS. GORDON:  No, thank you, your Honor.

3          THE COURT:  Then this matter is adjourned and

4  so just so you know my minute order will be that the

5  Court held a status conference and the Court granted in

6  part and denied in part the motion to compel and sent it

7  back to the parties for them to work out, okay?  With

8  that, we're adjourned.  Thank you.

9          MS. GORDON:  Thank you, your Honor.

10          MR. GRUNFELD:  Thank you, your Honor.

11              (Matter concluded)

12                  -o0o-

13

14

15

16

17

18

19

20

21

22

23

24

25

29

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **12th** of **May**, 2018.

*Linda Ferrara*
Linda Ferrara

AAERT CET**D 656
Transcriptions Plus II, Inc.